UNITED STATES of America

v.

Buddy Lynn THOMPSON

No. A–97–CR–198 AA.

United States District Court,
W.D. Texas,
Austin Division.

March 25, 1998.

Gerald Conley Carruth, Assistant United States Attorney, Austin, TX, for plaintiff.

William H. Ibbotson, Federal Public Defender's Office, Austin, TX, for defendant.

## ORDER

ALBRIGHT, United States Magistrate Judge.

Before the Court is Defendant Buddy Lynn Thompson's Motion to Dismiss (Clerk's Docket No. 14) filed on February 11, 1998. The Government filed a Response on February 23, 1998 (Clerk's Docket No. 15). The Court heard oral arguments from all counsel on March 11, 1998.

The Government has charged Defendant Thompson, by way of information, with violation of 7 U.S.C. § 2156 (a misdemeanor count of dog fighting). The Parties agree that the Defendant served as a "referee" for a single fight between two pit bull dogs on July 24, 1993. The Government contends, and the Defendant acknowledges, that a series of fights took place on that date. The Defendant makes three distinct arguments. First, he contends that he cannot be convicted of violating 7 U.S.C. § 2156 because neither of the two dogs in the fight that the Defendant refereed had been transported in interstate commerce. He also contends that the statute is constitutionally infirm because Congress does not have the authority under the Commerce Clause to criminalize the Defendant's conduct. The Defendant also contends that the statute violates the Tenth Amendment because regulation of animal welfare is traditionally an area of state regulation.

## What Is an Animal Fighting Venture?

The Defendant in this case contends that he cannot be subjected to prosecution for the crime of aiding and abetting the exhibition of an animal fighting venture to which one or more animals had been moved in interstate commerce because he was involved (as a referee) in only one dog fight. The fight took place in Texas and involved two dogs that had not been moved in interstate commerce. The question presented to the Court is whether the term "venture" in the statute should be construed narrowly to mean the single fight that the Defendant participated in; or whether the "venture" was the entire set of dog fighting activities that took place on the date that the Defendant participated as a referee.

Congress originally enacted the Animal Welfare Act ("AWA") to fight what was perceived to be an escalating problem concerning pets being stolen for use in medical research and abusive animal research projects. The AWA has been amended several times since its original passage in 1966 resulting in a dramatic expansion of its original scope and purpose. Animal Welfare Act of 1970, Pub.L. No. 91–579, 84 Stat. 1560 (1970); Animal Welfare Act Amendments of 1976, Pub.L. No. 94–279, 90 Stat. 417 (1976), Pub.L. No. 99–198, Title XVII, 99 Stat. 1650 (1985) (codified as amended at 7 U.S.C. §§ 2131–2159). The AWA now governs not only animal research activities, but covers a broad array of activities involving the treatment of animals. The AWA is the core federal statute regulating animal use and abuse.

The Defendant argues that the Court should dismiss the sole count in the Information because Subsection 2156(a) of the AWA requires that one of the dogs in the dog fight charged be moved in interstate or Foreign Commerce for the purpose of participating in that fight. In addition, the Defendant contends that the statute re-

quires the Government to establish that he knowingly moved or facilitated the movement of the animal across state lines for the purpose of fighting. The Defendant contends that the statute requires that the transport be both knowing and intentional.

The Court finds that the Defendant construes the term "animal fighting venture" too narrowly. The Court holds, as a matter of law, that the term "animal fighting venture" includes the entire commercial activity. Although the dog fighting venture may be conducted in private, and any single fight may involve two dogs that have never crossed state lines, an animal fighting venture is interstate in nature if it involves participants in the gambling who have crossed state lines, or advertised across state lines, or any of the animals in the entire venture have been transported across state lines. Following this argument to its logical conclusion, any person who knowingly participates in any part of an animal fighting venture is involved in the entire venture (meaning all of the fights that may take place during the course of the various contests). In this case, the fact that the Defendant happened to referee a fight that did not involve animals that had been transported in interstate commerce does not immunize him from criminal liability for his participation in an "animal fighting venture."

This holding is consistent with the intent of Congress when it enacted the AWA. Congress believed at the time that it enacted this legislation that dog fighting had become an interstate enterprise. The legislative history indicates that Congress was concerned about the proliferation of regional conventions related to dog fighting that attracted individuals from several states. Congress noted that there are nationally circulated magazines that advertise dog fights.

In this case information concerning the time, date, and location of the animal fighting venture was transmitted using interstate wires and letter services. People who want to attend and pay to watch the fights cross state lines. Moreover, the breeding of the dogs can take place across state lines. Given the undisputed evidence that money is wagered on the fights, as well as negotiations concerning the purchase, sale, and breeding of the animals, this is an inherently interstate commercial activity.

There is nothing in the AWA that indicates that the Congress intended to immunize any person who was involved in a single fight that involved dogs from the host state. The Court assumes that the Congress was aware of the nature of animal fighting at the time it enacted the legislation and could have used a term that clearly referenced a single fight. Instead, the Congress used the term "venture." Accordingly, the Court finds that Defendant was involved in a "animal fighting venture" as delineated by the statute.

**The Commerce Clause Issue.**

The question over the proper reach and extent of federal law over criminal activities is the source of countless pages of comment and debate in the legal periodicals. Throughout this nation's history, the reach of the federal government has ebbed and flowed. The Supreme Court has shown some deference to claims of state autonomy in areas (such as regulation of criminal activity) historically or traditionally subject to state control. The case of *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) is the most recent effort by the Supreme Court to resolve the issue of the proper breadth of federal criminal jurisdiction. In *Lopez*, the Court invalidated Congressional regulation of firearms in school zones. In *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), the Court narrowly interpreted a congressional override of state-established electoral qualifications.

Chief Justice Rehnquist wrote that under the Government's interpretation of the Commerce Clause that "it is difficult to perceive any limitation on federal power,

even in areas such as criminal law enforcement...where States historically have been sovereign." *Ashcroft* at 457, 111 S.Ct. 2395.

■ In *Lopez*, the Supreme Court held that the Gun–Free School Zones Act[1] was unconstitutional and set out three legitimate areas that Congress may properly regulate through the use of its commerce power: (1) the use of the channels of interstate commerce; (2) any instrumentality of interstate commerce, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce. Congress can regulate an instrumentality of interstate commerce as long as the regulatory action is reasonable and rationally related to a legitimate governmental interest.

The Court finds that *Lopez* is inapposite to this case. In *Lopez*, the Government did not argue that firearm possession in a school zone was a channel or an instrumentality of interstate commerce. The Government argued that Congress may regulate such possession within a school zone as an activity that substantially affects interstate commerce because such possession may result in violent crime in schools, which in turn affected the national commerce. In other words, the Government argued that their power was limitless.

■ In this case, contrary to Defendant's argument, the federal government can meet all three tests set forth in *Lopez*. There is evidence that the people involved in animal fighting use the channels of interstate commerce. They publish and distribute magazines and other periodicals that are shipped across state lines. The Court assumes that they use telephones to inform each other of the time and dates and location of animal fighting activities. Animals are transported across state lines for breeding and fighting.[2] People travel across state lines to transport the animals, to referee the matches, to gamble on the matches, or simply to view the animals. Finally, the Court finds that the activities substantially affect interstate commerce. It is clear that people purchase and sell these animals as well as use them for sport and gamble on the fights. The Court finds that Defendant's Commerce Clause argument is without merit.

**The Tenth Amendment Issue.**

■ The Defendant contends that this Court should invalidate this statute under the Tenth Amendment because the regulation of animal welfare generally, and with regard to dog fighting specifically, encroaches upon an area of traditional state power and control. "Were the federal government to take over the regulation of entire areas of traditional state concern, ...[t]he resultant inability to hold either branch of the government answerable to the citizens [would be] dangerous...." *Lopez*, 514 U.S. at 577, 115 S.Ct. 1624 (Kennedy, J. concurring). The Court has also recognized that states have broad discretion to configure their tax systems. *Oregon Waste Sys., Inc. v. Department of Envtl. Quality* 511 U.S. 93, 106–07, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). The area of domestic relations has long been regarded as a virtually exclusive province of the States. *Sosna v. Iowa*, 419 U.S.

---

1. The Gun–Free School Zone Act ("GFSZA"), 18 U.S.C.A. § 922, criminalized the knowing possession of a firearm in a place that the person believed, or had reason to believe. was a school zone. The Court found that the GFSZA had no nexus to any interstate commerce or economic enterprise. The Court also held that the GFSZA did not regulate an activity arising out of, or substantially affecting, interstate commerce. The Court also held that the Act contained no express jurisdictional element that limited its reach to interstate activity.

2. The Court will not replow the ground it has already covered concerning the fact that the Defendant was involved in a single fight that involved two dogs that had not crossed state lines. The Court has already determined that the Defendant participated in an "animal fighting venture" that consisted of the entire day of dog fights.

393, 404, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

The Court finds that the Defendant's Tenth Amendment argument in this case is without merit. While regulation of animals is traditionally a state obligation, there is no legal reason why in this case the federal government cannot also prosecute this Defendant. The United States, as a federal system, subjects its citizens simultaneously to the jurisdiction of both sovereigns. *Moore v. Illinois,* 55 ˙(14 How.) 13, 20, 14 L.Ed. 306 (1852).[3] The Tenth Amendment states that whatever authority has not been delegated to the United States has been reserved to the states or to the people. Unfortunately, the Tenth Amendment does not explicitly reveal what has been reserved and what has been delegated. The Court must resolve whether there must be an express reservation of state authority over a crime to disable the federal government from involvement. Then the Court must decide whether the state has invited the federal government to use its forces to investigate and prosecute crimes.

States have exclusive power in three instances: (1) When the Constitution expressly recognizes power in the states; (2) when the power is expressly forbidden to Congress (and not forbidden to the states); and (3) when the power is not granted to Congress (and not forbidden to the states). The Court does not believe that either of the first two apply in this case. This is not, by way of example, a case under the twenty-first Amendment in which the Constitution grants an express power to the states with respect to the regulation of "intoxicating liquors." Nor does this case involve the First Amendment, which prior to the Fourteenth Amendment, prohibited Congress alone from establishing laws regarding free exercise of religion and speech.

Rather, the provision of the AWA concerning animal fighting ventures is a valid exercise of the federal government's power under the Commerce Clause. The Tenth Amendment does not prohibit or invalidate these provisions. The term "animal fighting venture" is defined, in pertinent part, as "any event which involves a fight between at least two animals and is conducted for the purposes of sport, wagering, or entertainment. . . . ." 7 U.S.C. § 2156(g)(1). The legislative history demonstrates that Congress intended ˙ the phrase "animal fighting venture" to include a series of dog fights. Congress clearly has the power to regulate an economic activity that involves interstate commerce, regardless of whether the activity is also regulated by a state.

The Government also presented persuasive arguments why the federal government should not defer to the state with regard to the regulation of animal fighting. There is evidence in this case that local authorities were participating in the animal fighting activities and were thwarting law enforcement. While one or more˙ corrupt members of law enforcement do not vitiate the Tenth Amendment, it is a powerful buttress to the argument that the federal government may *also* have a legitimate interest in regulating criminal activity that has traditionally been regulated by state governments. This is especially true because, absent a specific constitutional prohibition, states are certainly free to ask the federal government for assistance in regulating activities such as animal fighting.

In light of the foregoing, the Court DENIES Thompson's Motion to Dismiss.

---

**3.** "Every citizen of the United States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns and liable to punishment for an infraction of the laws of either."